IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SERENITY STARR, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| VENTRON MANAGEMENT, LLC | ) | |
| D/B/A HARVARD PLACE | ) | |
| APARTMENTS, and | ) | |
| | ) | |
| EQUITY LEASING-FINANCE II, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, Serenity Starr ("Ms. Starr" or "Plaintiff") by and through undersigned counsel, and files this Complaint for Damages against Defendants Ventron Management, LLC d/b/a Harvard Place Apartments and Equity Leasing-Finance II, LLC (collectively "Defendants") and shows the Court as follows:

## **JURISDICTION AND VENUE**

### 1.

Plaintiff invokes the jurisdiction of this court pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* (FMLA) and the Americans with

Disabilities Act, as amended, 42 U.S.C. § 12101 et. seq., ("ADAAA") including the ADA Amendments Act of 2008. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 1343, 42 U.S.C. § 12117, and 29 U.S.C. § 261(b).   This action seeks declaratory relief, along with liquidated and actual damages, attorney's fees and costs for Defendants' failure to pay federally mandated overtime wages to Plaintiff in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq.* (hereinafter the "FLSA"). Plaintiff also brings claims pursuant to 26 U.S.C. § 7434.

## 2.

The Defendant does business in this judicial district.   Additionally, the unlawful employment practices committed by Defendant that forms the basis of this lawsuit were committed within this district.

## 3.

This Court has subject matter jurisdiction over the matters at issue.

## 4.

This Court has personal jurisdiction over Defendant.

## PARTIES

5.

Plaintiff Serenity Starr is a citizen of the United States of America, and is subject to the jurisdiction of this Court.

6.

Defendant Ventron Management, LLC ("Ventron") is a Foreign Profit Corporation which is qualified and licensed to do business in the State of Georgia and at all times material hereto has conducted business within this District.

7.

Defendant Ventron may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Michael Scaljon, 2210 Sullivan Rd., College Park, Georgia. 30337.

8.

Defendant Equity Leasing-Finance II, LLC ("Equity Leasing") is a Foreign Profit Corporation which is qualified and licensed to do business in the State of Georgia and at all times material hereto has conducted business within this District.

9.

Defendant Equity Leasing may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Corporate Creations Network, Inc., 2985 Gordy Parkway, 1st Floor, Marietta, Georgia 30066.

10.

At all times mentioned herein, before and after, the persons responsible for perpetrating Plaintiff's discriminatory actions were agents, servants and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or the actions were expressly authorized by Defendants and/or their actions were ratified by Defendants, thus making Defendants liable for said actions.

11.

Plaintiff is considered an "eligible employee" within the meaning of the FMLA, 29 U.S.C. §2601 *et seq.*

12.

Defendants are "employers" within the meaning of the FMLA, 29 U.S.C. §2601 *et seq*, which includes a "successor in interest."

13.

Plaintiff worked at least 1250 hours for Defendants within the 12 months prior to her termination.

14.

Plaintiff was employed by Defendants for twelve (12) months.

15.

Plaintiff was employed by Defendants at a worksite with 50 or more employees within 75 miles of that worksite.

16.

At all such times, Plaintiff was also an "employee" of Defendants as defined under the ADA at 42 U.S.C. § 12111(4).

17.

Defendants are now and, at all times relevant hereto, have been a corporation engaged in an industry affecting commerce. During all times relevant hereto, Defendants have employed fifteen (15) or more employees for the requisite duration under the ADA. Defendants are therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

18.

At all times mentioned herein, before and after, the persons responsible for perpetrating Plaintiff's discriminatory actions were agents, servants and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or the actions were expressly authorized by Defendants and/or their actions were ratified by Defendants, thus making Defendants liable for said actions.

19.

At all relevant times to the facts set forth in this Complaint, separate defendants were acting as joint employers in either a joint venture capacity and undertaking to execute a common business purpose with a mutual right of control; integrated enterprise; or were successors in interest.

20.

Plaintiff was an "employee" of Defendants, as that term has been defined by the FLSA, 29 U.S.C.S. § 201 et seq., 29 U.S.C. § 203(e).

21.

Defendants are a private employer engaged in interstate commerce, and its gross revenues exceed $500,000 per year.

22.

Throughout Plaintiff's employment with Defendants, Defendants suffered or permitted Plaintiff to work in excess of 40 hours in given workweeks without receiving overtime compensation.

23.

Defendants are each an "employer" within the definition of the FLSA, 29 U.S.C. §203(d).

24.

Defendants are governed by and subject to the FLSA, 29 U.S.C. §204 and §207.

## ADMINISTRATIVE PROCEDURES

25.

Ms. Starr timely filed a Charge for disability discrimination on August 19, 2016, against Defendant with the Equal Employment Opportunity Commission (EEOC), and later filed an amendment to that Charge alleging retaliation on September 12, 2016.

26.

The EEOC issued a "Notice of Right to Sue" for charge number 410-2016-005045 on June 14, 2017, entitling an action to be commenced within ninety (90) days of receipt of that notice.

27.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue".

## FACTUAL ALLEGATIONS

28.

Defendants hired Ms. Starr on or about October 5, 2015 as a Property Manager.

29.

Ms. Starr suffers from mental impairments, including Generalized Anxiety Disorder, which substantially limits major life activities including but not limited to learning, thinking, concentrating, performing manual tasks, and working.

30.

Ms. Starr has a disability as defined by the ADAAA.

31.

Defendants were aware of Ms. Starr's disability.

32.

Defendants regarded Ms. Starr as having a disability.

33.

Ms. Starr has a record of being disabled.

34.

Ms. Starr suffers from serious medical conditions for which she receives continuing medical treatment from her health care providers.

35.

Defendants were aware of Ms. Starr's serious medical conditions.

36.

On or about January 1, 2016, Ms. Starr told her Manager, Margaret Delapierre, she has Generalized Anxiety Disorder.

37.

Ms. Starr told her Ms. Delapierre that, as a symptom of her Generalized Anxiety Disorder, she sometimes experiences panic attacks and becomes overwhelmed.

38.

Ms. Starr told her Ms. Delapierre, when she experiences these symptoms, she needs short periods of time to break and allow her symptoms to subside.

39.

Ms. Delapierre told Ms. Starr she could not have breaks.

40.

A few days after Ms. Starr discussed her disability with Ms. Delapierre, Ms. Delapierre told to Ms. Starr that she should smoke some marijuana with Ms. Delapiere, laughed, and said that with her disorder, the marijuana would help her.

41.

Later, Ms. Delapierre told other employees that Ms. Starr was bipolar and crazy.

42.

Ms. Starr also told Manager, Tanya Wynn, that she had Generalized Anxiety Disorder.

43.

Ms. Starr also explained her need for occasional, brief breaks to manage the symptoms of her disability to Ms. Wynn.

44.

Defendants were aware Ms. Starr was seeking treatment for her medical condition/disability.

45.

On or about May 15, 2016, Ms. Starr left voicemails for Ms. Wynn and her Direct Supervisor, Lorena Pal, requesting to speak with them to make a complaint about what she was experiencing at her office.

46.

No one from Defendants management or human resources returned Ms. Starr's voicemail

47.

In June and July 2016, Ms. Starr noticed that her client's leasing applications were being denied more often, thus limiting her income potential.

48.

On or about July 8, 2016, Defendants issued Ms. Starr a written counseling notice alleging her work performance was poor.

49.

Ms. Starr noted on the written counseling notice that she felt like she was being targeted by staff and Defendants.

50.

On or about July 12, 2016, Ms. Starr sent an email complaining that she was being continually harassed and retaliated against and specifically referencing Ms. Delapierre's derogatory comments about her disability.

51.

In or around July 2016, Ms. Starr required medical leave to seek treatment for the serious medical condition of her son.

52.

In or around August 2016, Ms. Starr submitted a Reasonable Accommodation Request Form to Defendants, outlining her Generalized Anxiety Disorder and Panic Attacks.

53.

In or around August 2016, Ms. Starr requested Mary Muhammad, Tinisha Bennett and/or Tanya Wynn review some of her applicant's files that had been denied, noting that the applicants met all the requirements but were nonetheless denied.

54.

In August 2016, Ms. Starr received medical treatment at DeKalb Medical Center and submitted to Defendants an Excuse from Work for August 1, 2 and 3, 2016.

55.

On August 4, 2016, Ms. Starr was treated at Grady Hospital Emergency Room and submitted a medical note to Defendants stating that she is unable to return to work for a minimum of twenty-four hours.

56.

On August 5, 2016, Ms. Starr submitted a medical note that she was cleared to return to work effective August 15, 2016.

57.

On August 6, 2016, Mary Muhammad issued an email that she had reviewed one of Ms. Starr's applicants in question and found the applicant met all requirements.

58.

In approximately August 2016, Ms. Starr submitted to Defendants a note from her physician requesting she be given the reasonable accommodation of

fifteen minute breaks to regain composure when Ms. Starr experiences panic attacks.

59.

Ms. Starr filed an EEOC Charge of discrimination against Defendants alleging disability discrimination on or about August 19, 2016.

60.

Ms. Starr and Defendants participated in mediation at the EEOC on September 9, 2016. The mediation was unsuccessful.

61.

Defendants terminated Starr's employment on September 12, 2016, the very next business day after the EEOC mediation.

62.

Defendants issued a Separation Notice to Ms. Starr which stated the reason for the termination of her employment was "Job Performance."

63.

Defendants' proffered reasons for the termination of Ms. Starr's employment are pretexts for Defendants' discriminatory and retaliatory animus.

64.

Others outside of Plaintiff protected class were treated differently.

65.

Defendants failed to engage in an interactive process with Ms. Starr regarding her requests for reasonable accommodations.

66.

Throughout her employment with Defendants, Plaintiff was a non-exempt employee entitled to overtime compensation for hours worked over 40 in a workweek. Throughout this period, Plaintiff's primary duty was working as a processor for lease agreements for Defendants' rental properties.

67.

Throughout her employment with Defendants, Plaintiff was paid without overtime compensation for the hours Plaintiff worked in excess of 40 in workweeks.

68.

Throughout her employment with Defendants, Plaintiff was entitled to overtime compensation for all hours worked in excess of 40 hours in a workweek.

69.

Throughout her employment with Defendants, Plaintiff regularly worked an amount of time that was more than 40 hours in given workweeks and was not paid the overtime wage differential for hours she worked over 40 in such weeks.

70.

During Plaintiff's employment with Defendants, Defendants failed to keep accurate time records for all hours worked by Plaintiff.

71.

Plaintiff is entitled to overtime pay for the hours she worked over 40 in given workweeks. Defendants' practices violate the provisions of the FLSA, 29 U.S.C. § 201, et seq. including but not limited to 29 U.S.C. § 207. As a result of Defendants' unlawful practices, Plaintiff has suffered lost wages.

72.

Throughout Plaintiff's employment, Plaintiff's job duties and the performance thereof, along with her hours worked were controlled by Defendants.

73.

The labor involved in Plaintiff's manual labor position for Defendants did not require specialized skill.

74.

Throughout her employment with Defendants, Plaintiff was economically dependent on Defendants.

## COUNT I:
## FMLA INTERFERENCE

75.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

76.

Defendants were each an "employer" as defined by the FMLA.

77.

Plaintiff was an eligible employee under the FMLA.

78.

Plaintiff worked at least 1250 hours for Defendants prior to Defendants' termination of her employment

79.

Plaintiff was employed by Defendants for more than 11 months, and Defendants understood Plaintiff's need for and intent to take protected medical leave upon the completion of her twelfth month on October 5, 2015.

80.

Plaintiff was employed by Defendants at a worksite with 50 or more employees within 75 miles of that worksite.

81.

Plaintiff had a serious medical condition, as defined by the FMLA.

82.

Defendants were aware of Plaintiff's serious medical condition and her need for and intent to take protected medical leave to seek treatment for his own serious medical condition, immediately upon becoming eligible for FMLA medical leave.

83.

Defendants terminated Plaintiff's employment, only 23 days before she became eligible for FMLA protected medical leave, to avoid having to accommodate Plaintiff's rights to protected medical leave.

84.

Defendants interfered with Plaitniff's rights protected under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., entitling Plaintiff to all appropriate relief under the statute.

## COUNT II:
## DISABILITY DISCRIMINATION IN VIOLATION OF ADA

85.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

86.

Plaintiff suffers from a mental impairment which substantially limits major life activities including but not limited to learning, thinking, concentrating, performing manual tasks, and working.

18

87.

Plaintiff's mental impairment is a "disability" within the meaning of the ADA, as amended.

88.

Defendants were aware of Plaintiff's disability.

89.

Defendants received notice of Plaintiff's disability in January 2016 and throughout the following months.

90.

Defendants regarded Plaintiff as having a disability such that she is a person with a disability within the meaning of the ADA, as amended.

91.

Plaintiff has a record of having a disability such that she is a person with a disability within the meaning of the ADA, as amended.

92.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

93.

Defendants terminated Plaintiff's employment, in whole or in part, because of her disability, perceived disability, or record of having a disability.

94.

Defendants' manager made derogatory comments about Plaintiff's disability.

95.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendants violated the ADA, as amended.

96.

Although Defendants purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

97.

Defendants treated other employees outside Plaintiff's protected class differently.

98.

Defendants' actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of

the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

99.

Defendants have willfully and wantonly disregarded Plaintiff's rights, and Defendants' discrimination against Plaintiff was undertaken in bad faith.

100.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her disability.

101.

As a direct and proximate result Defendants' violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

102.

As a result of Defendants' discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

103.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

## COUNT III

## FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

104.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

105.

Plaintiff suffers from a mental impairment which substantially limits major life activities including but not limited to learning, thinking, concentrating, performing manual tasks, and working.

106.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

107.

Defendants were aware of Plaintiff's disability.

108.

Defendants received notice of Plaintiff's disability in approximately January 2016, and throughout the following months.

109.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

110.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

111.

Plaintiff requested that Defendants accommodate her disability by allowing her to take fifteen-minute breaks at the onset of a panic attack.

112.

Upon receiving Plaintiff's request for accommodations, Defendants failed to engage in any interactive process with Plaintiff regarding her requested accommodations.

113.

Defendant refused to provide Plaintiff with the reasonable accommodations, even though to do so would not impose an undue hardship.

114.

By refusing to accommodate Plaintiff, Defendants violated the ADA, as amended.

115.

Defendants have willfully and wantonly disregarded Plaintiff's rights, and Defendants' failure to accommodate Plaintiff's disability was undertaken in bad faith.

116.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her disability.

117.

As a direct and proximate result Defendants' violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

118.

As a result of Defendants' discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

119.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

## COUNT IV

## RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

120.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

121.

Plaintiff suffers from a mental impairment which substantially limits major life activities including but not limited to learning, thinking, concentrating, performing manual tasks, and working.

122.

Plaintiff's mental impairment is a "disability" within the meaning of the ADA, as amended.

123.

Defendants were aware of Plaintiff's disability.

124.

Defendants received notice of Plaintiff's disability.

125.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

126.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

127.

Plaintiff engaged in protected activity when she requested that Defendants accommodate her disability by allowing her to take fifteen-minute breaks and a brief, defined period of medical leave to treat her disability.

128.

Plaintiff engaged in protected activity when she filed an EEOC charge of discrimination against Defendants.

129.

Defendants retaliated against Plaintiff by terminating her employment on the basis of her accommodation requests.

130.

Defendants terminated Plaintiff's employment less than a month after her most recent requests of accommodations.

131.

Defendants retaliated against Plaintiff by terminating her employment on the basis of her EEOC Charge.

132.

Defendants terminated Plaintiff's employment less than a month after she filed her EEOC Charge and only one day after an unsuccessful EEOC mediation.

133.

Defendants' proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

134.

Defendants further retaliated against Plaintiff by evicting her from her home.

135.

Defendants' retaliatory actions against Plaintiff were in violation of the ADA, as amended.

136.

Defendants willfully and wantonly disregarded Plaintiff's rights, and Defendants' retaliation against Plaintiff was undertaken in bad faith.

137.

As a result of Defendants' retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

138.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

## COUNT V:

## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

139.

Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

140.

Defendant hasv iolated the FLSA, 29 U.S.C. §207, by failing to pay overtime wages for time that Plaintiff worked in excess of 40 hours in given workweeks.

141.

Pursuant to the FLSA, 29 U.S.C. §216, Plaintiff brings this lawsuit to recover unpaid overtime wages, liquidated damages in an equal amount, attorneys' fees, and the costs of this litigation.

142.

Defendant's violations of the FLSA were willful and in bad faith.

143.

Defendant knew or showed reckless disregard for the fact its actions, policies, and/or omissions violated the FLSA.

144.

Defendant knew or had reason to know that Plaintiff regularly worked over 40 hours in workweeks without overtime compensation.

145.

By failing to accurately report, record, and/or preserve records of hours worked by Plaintiff, Defendant has failed to make,  keep and preserve records with

respect to its employees, including Plaintiff sufficient to determine their wages, hours and other conditions and practice of employment, in violation of the FLSA.

**WHEREFORE**, Plaintiff requests judgment as follows:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)     Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)     Reasonable attorney's fees and expenses of litigation;

(e)     Trial by jury as to all issues;

(f)     Prejudgment interest at the rate allowed by law;

(g)     Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)     Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)     All other relief to which she may be entitled.

Respectfully submitted the 11th day of September, 2017.

**BARRETT & FARAHANY**

s/ Amelia A. Ragan
Amelia A. Ragan
Georgia Bar No. 831387
Attorney for Plaintiff Serenity Starr

1100 Peachtree Street, N.E.
Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
amelia@justiceatwork.com